IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-3045

IMAGINEX CONSULTING, LP, a Delaware limited partnership, and

    Plaintiff,

v.

REPRIVATA LLC, a Delaware limited liability company.

    Defendant.

## COMPLAINT AND JURY DEMAND

Plaintiff, ImagineX Consulting, LP ("ImagineX"), by and through undersigned counsel, by way of its Complaint against Defendant Reprivata LLC ("Reprivata"), allege the following:

### I.   INTRODUCTION

1. Beginning in February 2020 and until August 2020, ImagineX worked closely with Reprivata to develop a minimal viable project ("MVP") for a proprietary secure network called Enclave ("Enclave") that had specified security and encryption protocols and allowed for secure and trackable collaboration within Communities of Trust ("CoT") with filesharing, messaging, and voice functionality along with the use of other "apps" within demarcated networks.

2. During the first phase of initial development, beginning in February 2020, in which ImagineX developers worked with Reprivata Technical Leads, Massoud Rad and Scott Yeager, Reprivata's Technical Lead/Architect and its Managing Partner, respectively,

1

ImagineX was Reprivata's primary technology partner to develop the Enclave project collaboratively with Reprivata, even opening its office space to Reprivata to facilitate its design and development. During this first successful phase of development, ImagineX did not receive any undesirable feedback or any sense from Reprivata that it was deficient in its work product or objectives. On the contrary, the ImagineX development team received architecture approval and delivery praise from both of the lead Reprivata stakeholders. Reprivata paid ImagineX for its work during this phase.

3. Beginning in April 2020 and coinciding with the second phase of development, the management of the Enclave project shifted from the leadership of Massoud Rad and Scott Yeager and increasingly became vested in the hands of Caleb Eastman ("Eastman"), a Chief Technology Officer hired by Reprivata. As Eastman started to take charge of the Enclave project, the technical architecture and product plans developed under the guidance and approval of Massoud Rad gradually started to change towards a new technology architecture and a combined project team development process that included ImagineX team members as well as newly hired Reprivata developers and developers from another technology vendor, WinterWinds, of which Eastman is both the Chief Technology Owner and Co-Founder. Reprivata put Eastman in charge of the Enclave visioning, marketing, and product management of the Enclave project.

4. From April 2020 to June 2020, Yeager approved ImagineX to continue to work on the original scope and designs as Eastman was preparing a new project delivery approach. This approach took the form of high-level function outlines and ideas documented in Reprivata's Azure DevOps system for agile project management. The new technology architecture was

formally announced to ImagineX at the end of June 2020 and ImagineX was instructed to stop development of features under the original design and to instead work on newly documented features based on the new technology architecture. Because the governing contracts stated that ImagineX would conduct work based on Reprivata's priorities, ImagineX pivoted their development activities to this new approach and worked diligently throughout this second phase of development as directed by Reprivata leadership. ImagineX facilitated the onboarding and transitioning of newly hired Reprivata engineers and Winterwinds personnel onto the combined team.

5. Although ImagineX began to work more closely with Reprivata development team members, ImagineX's attempts to engage Scott Yeager and other Reprivata executives about product disconnects was met with a common response that Eastman was ImagineX's primary contact and to engage with only him on project concerns. ImagineX raised its concerns to Eastman about the disconnect between the product organization and the technology organization in terms of the product functions and obscure and unrefined roadmap. Eastman assured ImagineX that Reprivata was going to ensure alignment internally and across Reprivata's external vendors.

6. ImagineX completed development activities on August 7, 2020 and was in the process of negotiating final scope for the next piece of work, which would complete functions based on the new architecture. Eastman confirmed that scope and requested ongoing assistance from ImagineX through the end of the calendar year 2020. Then, on August 10, 2020, without notice or warning, Reprivata began to remove and revoke ImagineX's access to the Enclave project, cancel meetings and decommission access rights. After two days of no communication,

ImagineX requested an urgent meeting with Scott Yeager and John B. "Tripp" Hardy and, for the first time since start of work in February, ImagineX was told there were issues with their work product.

7. Now, ImagineX comes before this court as Reprivata has failed to pay ImagineX for its work, services, and licenses provided in connection with the Enclave project, as well as other unrelated and outstanding invoices. Consequently, ImagineX brings this action to obtain the sums rightfully due and owing to it.

## II. PARTIES

8. Plaintiff, ImagineX, is a Delaware limited partnership with a principal place of business at 1 Glenlake Parkway, NE, Unit 200, Atlanta, Georgia 30328. Its partners are citizens of Georgia, Delaware, North Carolina, Virginia, and Canada.

9. Plaintiff is a business and technology consulting firm with a focus on helping clients transform their businesses through emerging technologies. Recognized by Inc. Magazine's Annual Inc. 5000 list as one of the nation's fastest-growing private companies, ImagineX provides software development and data solutions, DevOps, and security-based consulting.

10. Defendant, Reprivata, is a Delaware limited liability company with a principal place of business at 1300 West Sam Houston Parkway South, Houston, Texas 77042. Upon information and belief, Reprivata has four members, John B. "Tripp" Hardy, F. Scott Yeager, David Wallace Cox, and Derek Jenkin, whose respective citizenships are Texas, Texas, Florida, and Canada.

11. Defendant claims to offer a proprietary secure network enclave that meets stringent encryption and security protocols and enables secure and trackable collaboration within

4

Communities of Trust (CoT) via file sharing, messaging, voice, and other apps within demarcated networks.

### III.   JURISDICTION AND VENUE

12.    The United States District Court for the District of Colorado has personal jurisdiction over this suit and venue lies within this District because the parties have consented to jurisdiction in this Court through an exclusive forum selection clause in the contract at issue (the "MSA", as further defined below) at Section 6.1, which provides in the pertinent part that "[e]xclusive jurisdiction for litigation of any dispute, controversy or claim arising out of or in connection with this Agreement or the breach thereof shall be brought only in the Federal or State court with competent jurisdiction located in Denver County, Colorado."  A true and accurate copy of this contract is attached as **Exhibit A, incorporated by reference herein**.

### IV.   FACTUAL ALLEGATIONS

13.    The Plaintiff repeats, realleges, and incorporates all previous paragraphs to this Complaint as though fully set forth herein.

14.    On or about February 12, 2020, the Parties entered into a Master Services Agreement ("MSA") as a high-level contractual agreement between ImagineX and Reprivata governing the relationship between the two for the provision of specified services by ImagineX. See Exhibit A.

15.    The MSA provided that those specified services be set forth in subsequent Schedules of Work (each a "SOW") that the Parties would agree to.

16.    One project contemplated under the MSA was the provision of a minimal viable project ("MVP") for a proprietary secure network called Enclave ("Enclave") that had specified

security and encryption protocols and allowed for secure and trackable collaboration within Communities of Trust ("CoT") with filesharing, messaging, and voice functionality along with the use of other "apps" within demarcated networks.

17. Two SOWs were issued under the MSA related to Enclave. SOW1 was executed by the Parties on February 12, 2020 and essentially required that ImagineX provide an MVP proof of concept for the purposes of facilitating sales and to serve as the underlying platform for user access management and further development.

18. SOW1 was split into seven (7) distinct milestones for which payment would be made upon completion. Three of these distinct milestones were called "Sprints." Each Sprint was a two (2) week software development cycle in which certain agreed upon tasks were to be completed by ImagineX and delivered to Reprivata.

19. ImagineX completed SOW1 and Reprivata paid ImagineX for all of the milestones.

20. On April 20, 2020,[1] the Parties effectively entered into SOW2, which generally focused on providing the end solution scalable infrastructure and architecture of the Enclave and CoT.

21. Like with SOW1, SOW2 consisted of distinct milestones for which payment would be made upon completion along with a software license fee for a Static Application Security Test (SAST) scanning tool that was intended to identify vulnerabilities via an output report. As a result, all parties would then consider the appropriate remediation actions related to those associated vulnerabilities within the software code that ImagineX had created.

---

[1] Although SOW2 was effective as of April 20, 2020, it was not executed until June 4, 2020, and, at the time of execution, at least four of the eight sprints had already been completed by ImagineX.

22. SOW2's milestones consisted of eight (8) software development Sprints in which ImagineX was to "work on prioritized stories/requirements agreed upon and identified by both parties before the start of each Sprint."

23. ImagineX completed and delivered, or at least substantially completed and delivered, the eight software development Sprints in accordance with the requirements of SOW2 and the MSA and as directed by Reprivata.

24. Despite ImagineX completing the Sprints in SOW2 and communicating the completed work effort and scope associated, Reprivata did not pay ImagineX the full amounts due and owing under SOW2 and the MSA.

25. In addition to the SOWs issued concerning Enclave, there were other SOWs issued under the MSA.

26. On April 13, 2020, the Parties effectively entered into a fixed fee SOW for sales and support services for the setup and implementation of a Zendesk instance[2] (the "Zendesk SOW") to support a Reprivata Client which included recurring license fees to be paid to ImagineX. This Zendesk SOW was subject to a Change Order (the "Zendesk Change Order") that was effectively entered into on April 20, 2020 by the Parties and provided for additional deliverables and recurring license fees to be paid to ImagineX.  ImagineX has provided those recurring licenses under the Zendesk SOW and Zendesk Change Order, and invoiced them to Reprivata by its June 30, 2020 Invoice No. 1308, and its August 31, 2020 Invoice Nos. 1354 and 1353.  Reprivata has not paid these invoices.

---

[2] Zendesk is a customer support platform that allows a company to interface with its customers for purposes such as customer support, inquiries, or sales.

27. On April 13, 2020, the Parties effectively entered into a SOW for Technical Solution Engineer ("TSE") Support on a time and materials basis (the "TSE SOW") for a twelve (12) week period. ImagineX did provide those TSE services pursuant to the SOW, but has not been paid for its July 3, 2020 Invoice No. 1293 for the services rendered.

V. **FIRST CAUSE OF ACTION**
**Breach of Contract**

28. The Plaintiff repeats, realleges, and incorporates all previous paragraphs to this Complaint as though fully set forth herein.

29. The Parties entered into a contract, namely, the MSA and SOW2 for the provision of software development services for which Reprivata would pay ImagineX upon the completion of milestones set forth in SOW2 and for a software license fee for a security scanning tool. In addition, the Parties entered into a contract for the TSE SOW for TSE support services and the Zendesk SOW and Zendesk Change Order for, among other things, sales support software licensing.

30. ImagineX fully performed or at least substantially performed its obligations under the MSA, SOW2, TSE SOW, Zendesk SOW, and Zendesk Change Order and as directed by Reprivata.

31. Reprivata breached the MSA, SOW2, TSE SOW, Zendesk SOW, and Zendesk Change Order when it failed to pay ImagineX for its services and the software license fees after ImagineX completed and provided, or at least substantially completed and provided, the milestone and other obligations set forth in the MSA, SOW2, TSE SOW, Zendesk SOW, and Zendesk Change Order.

32. As a direct and proximate result of Reprivata's breach of the MSA, SOW2, TSE

SOW, Zendesk SOW, and Zendesk Change Order, ImagineX has been damaged and is entitled to its damages directly and proximately resulting from the breach, including, but not limited to any incidental, consequential, and compensatory damages, reasonable attorney's fees pursuant to Section 6.9 of the MSA, its pre- and post-judgment interest at the statutory rate of interest as well as its litigation costs, court costs, and expenses.

## VI.   SECOND CAUSE OF ACTION
### Quantum Meruit and Unjust Enrichment in the Alternative

33.     The Plaintiff repeats, realleges, and incorporates all previous paragraphs to this Complaint as though fully set forth herein, but states this Count II as an alternative to its breach of contract claim to the extent that there is no express contract or the Parties abrogated any express contract.

34.     ImagineX provided Reprivata a benefit, namely, the provision of software development services, TSE support services, and software licenses.

35.     ImagineX provided those services to Reprivata at ImagineX's expense by paying for, among other things, employee salaries tasked to the Enclave project and providing software licenses and TSE support services.

36.     It would be unjust and unfair for Reprivata to retain the benefit of those software development services, TSE support services, and software licenses without paying for them.

37.     As a direct and proximate result of Reprivata's failure to pay ImagineX for the software development services, TSE support services, and software licenses, ImagineX has been damaged and is entitled to damages directly and proximately resulting from Reprivata's failure to pay as well as pre- and post-judgment interest at the statutory rate of interest as well as its litigation costs, court costs, and expenses.

9

## VII. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ImagineX respectfully requests the following relief:

1. Judgment in favor of ImagineX and against Defendant on each cause of action alleged herein;

2. All damages caused by Defendant's unlawful actions in an amount to be determined at trial, such damages to include actual loss and unjust enrichment;

3. Any Exemplary and punitive damages that may be provided by law;

4. Pre-judgment and post-judgment interest on awarded damages;

5. Attorneys' fees, costs, and expenses incurred by ImagineX in investigating this misconduct and litigating this action;

6. Granting ImagineX such other and further relief as this Court deems just and proper.

## VIII. JURY DEMAND

ImagineX demands a trial by jury on all issues so triable.

                                          Respectfully submitted,

Dated:  October 9, 2020        By:__/s/ Thomas M. Dunlap_____
                                        Thomas M. Dunlap
                                            tdunlap@dbllawyers.com
                                        David Ludwig
                                            dludwig@dbllawyers.com
                                        Fax: (703) 777-3656
                                        tdunlap@dbllawyers.com
                                        dludwig@dbllawyers.com

                                        DUNLAP, BENNETT & LUDWIG, PLLC
                                        8010 S Co Rd 5, Suite 207
                                        Fort Collins, CO 80528
                                        Telephone: (703) 777-7319
                                        Facsimile:  703-777-3656
                                        Email: *litigation@dbllawyers.com*

                                        ATTORNEYS FOR PLAINTIFF
                                        IMAGINEX CONSULTING LP